UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20814-Civ-MORENO
MAGISTRATE P. A. WHITE

WENDALL JERMAINE HALL,          :

        Plaintiff,          :

v.                              :          REPORT OF
                                 MAGISTRATE JUDGE

PLUMBER OFFICIAL,               :

        Defendant.          :
_____:

## Introduction

Wendall J. Hall has filed a <u>pro se</u> civil rights complaint, pursuant to Title 42 U.S.C. §1983, while confined as a state prisoner at Central Florida Reception Center. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages arising from the allegation that defendant, Marvez, the plumbing official supervisor at Dade Correctional Institution, violated Hall's Eighth and Fourteenth Amendment rights when the sink in his prison cell lacked running water from February 25, 2010 to March 25, 2010, and he suffered injuries as a result thereof.

The case is pending against the Plumber Official, Marvez, in his individual and official capacities on the claim of cruel and unusual punishment. (DE#1:7). Moreover, Hall seeks injunctive relief for immediate repair of his sink. (<u>Id.</u>). Likewise, Hall seeks monetary and punitive damages in the amount of $2,000,000.00. (<u>Id.</u>:9). Presently before the Court is plaintiff's and defendant's motions for summary judgment. (DEs#58,67).

<u>Standard of Review</u>

A.   <u>The Law of Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of a law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (Citation omitted).

Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for the motion by identifying those portions of the record that demonstrate the nonexistence of a genuine issue of material fact.  This demonstration need not be accompanied by affidavits.  <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material

2

fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990).

The non-moving party, even a <u>pro se</u> prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714 (11th Cir. 1987); <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11th Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11th Cir. 1992). Despite the liberality with which courts are obliged to interpret <u>pro se</u> complaints, "a <u>pro se</u> litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990).

On September 30, 2010, Hall filed a <u>pro se</u> Motion for Summary Judgment, accompanied by a supplement thereto. (DEs#58,59). Thereafter, Marvez, on October 22, 2010, filed a Motion for Summary Judgment and Opposition to the Plaintiff's Motion for Summary Judgment. (DE#67). On October 28, 2010, an Order was entered

3

informing the _pro se_ plaintiff of his right to respond to an opposing party's motion for summary judgment, and instructing him regarding the requirements under Rule 56 for a response to such a motion(DE#68), which Hall responded to on November 1, 2010, followed by a supplemental affidavit. (DE#70,71). Then, on November 3, 2010 and November 17, 2010, Hall filed two Supplemental Responses to Marvez's Motion for Summary Judgment, respectively. (DEs#72,79).


### B. Law Relating to the Eighth Amendment


The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)); Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding that "the Due Process Clause affords . . . no greater protection").


In LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) an _objective_ element, a condition that inflicted unnecessary pain or suffering, Id., citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) a _subjective_ element, deliberate indifference on the part of the defendant(s) to that condition, Id., citing Wilson v. Seiter, 501 U.S. 594 (1991); and 3) causation, Id., citing Williams v. Bennett, 689 F.2d 1370, 1389-90 (11th Cir. 1982). Both the objective and subjective elements must be satisfied. LaMarca, supra, 995 F.2d at 1535, n. 17 (citing Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable pri-
sons, it does not permit inhumane ones. <u>Farmer</u>, <u>supra</u>, 511 U.S. at
832 (quoting <u>Rhodes</u>, <u>supra</u>, 452 U.S. at 349). Still, the Eighth
Amendment does not authorize judicial reconsideration of "every
governmental action affecting the interests or well-being of a
prisoner," <u>Whitley</u>, 475 U.S. at 319; instead, "'[a]fter incarcer-
ation, only the "'unnecessary and wanton infliction of pain'" . .
. constitutes cruel and unusual punishment forbidden by the Eighth
Amendment.'" <u>Id.</u> at 319 (quoting <u>Ingraham v. Wright</u>, 430 U.S. 651,
670 (1977) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976)
(citations omitted))). Crucial to establishing an "unnecessary and
wanton infliction of pain" is some proof that officials acted with
specific intent.

As the Eleventh Circuit in <u>Campbell v. Sikes</u> observed, the
Supreme Court in <u>Wilson v. Seiter</u>, and later <u>Farmer v. Brennan</u>, has
"refined the inquiry" regarding satisfaction of the subjective ele-
ment required for an Eighth Amendment deprivation. <u>Campbell</u>, <u>supra</u>,
169 F.3d at 1363. The Supreme Court explained in <u>Wilson v. Seiter</u>,
that the Eighth Amendment applies only to punishments, and that
prison conditions are only punishment if a mental element of puni-
tive intent is shown, <u>Wilson</u>, <u>supra</u>, 501 U.S. at 300 ("If the pain
inflicted is not formally meted out as punishment by the statute or
the sentencing judge, some mental element must be attributed to the
inflicting officer before it can qualify"). In <u>Farmer v. Brennan</u>,
the Court provided further explanation of the mental state that is
required for deliberate indifference, <u>Farmer</u>, <u>supra</u>, 511 U.S. at
837-38 (holding that a prison official cannot be found liable under
the 8th Amendment for denying an inmate humane conditions unless he
knows of and disregards an excessive risk to inmate health or
safety; and he must be both aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists, and

5

the defendant must also draw the inference).

As the Eleventh Circuit has noted post-_Farmer_, proof that the defendant should have perceived the risk, but did not, is insufficient. _Campbell_ _supra_, at 1364 (citing _Farmer_, at 838); _Cottrell v. Caldwell_, 85 F.3d 1480, 1491 (11th Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . .'") (quoting _Farmer_, _supra_, 511 U.S. at 834, 838). Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." _Campbell_, _supra_, at 1364 (citing _Farmer_, at 837).

C.   Law Pertaining to the Fourteenth Amendment

Although _Hall_ generally argues that his due process rights under the Fourteenth Amendment were violated, he fails to allege with any specificity the substance of the alleged violation(s). Notwithstanding, to the extent he argues that Marvez failed to act favorably on his grievances, Hall cannot proceed on this claim. The Constitution does not entitle prisoners and pretrial detainees in state or federal facilities to grievance procedures, _Adams v. Rice_, 40 F.3d 72, 75 (4th Cir. 1994), _cert. denied_ 514 U.S. 1022 (1995); _Buckley v. Barlow_, 997 F.2d 494, 495 (8th Cir. 1993); _Flick v. Alba_, 932 F.2d 728, 729 (8th Cir. 1991); _Stewart v. Block_, 938 F.Supp. 582, 588 (C.D. Cal. 1996); _Brown v. Dodson_, 863 F.Supp. 284, 285 (W.D. Va. 1994); and since even if a grievance mechanism has been created for the use of states inmates the mechanism involves a procedural right, not a substantive one, and it does not give rise to a liberty interest protected by the Due Process

Clause, <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996); <u>Hoover v. Watson</u>, 886 F.Supp. 410, 418 (D. Del. 1995); <u>Brown v. Dodson</u>, <u>supra</u> at 285; and thus, if the state elects to provide a grievance mechanism, violations of its procedures, or even a failure to respond to the prison grievance, do not give rise to a §1983 claim, <u>Buckley v. Barlow</u>, <u>supra</u>, 997 F.2d at 495; <u>Hoover v. Watson</u>, <u>supra</u>, 886 F.Supp. at 418-19. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance. <u>Flick v. Alba</u>, <u>supra</u>, 932 F.2d at 729.

Moreover, any claim as to the quality of life or the conditions Hall faced while at Dade Correctional Institution is not governed by the Due Process clause of the Fourteenth Amendment. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567 (11th Cir. 1985). Conditions of confinements that occur subsequent to and as a consequence of a person's lawful conviction of crime is covered by the Eighth Amendment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); <u>Hamm</u> at 1572. Whereas, conditions of confinement imposed prior to conviction are limited instead by the Fourteenth Amendment's due process clause. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); <u>Hamm</u> at 1572. Only the Eighth Amendment is applicable here, since the conditions Hall faced were imposed following a conviction of a crime. Accordingly, his claim regarding the lack of running water stemming from his cell's sink will only be analyzed pursuant to the Eighth Amendment.

### D.   Law Pertaining to Qualified Immunity

Qualified immunity is "an entitlement not to stand trial or

face the other burdens of litigation." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001)(quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). The purpose of the qualified immunity defense is to "protect[] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. ___, ___, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009) (<i>quoting</i> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); <u>Youmans v. Gagnon</u>, 626 F.3d 557, 562-63 (11th Cir. 2010). Qualified immunity shields from suit "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)(<i>quoting</i> <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001)).

In <u>Saucier</u>, <u>supra</u>, the Supreme Court set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Lee</u>, <u>supra</u> at 1194 (quoting <u>Saucier</u>, 533 U.S. 194, 201); and then, if a constitutional right would have been violated under the <i>plaintiff's</i> version of the facts, the court must then determine "whether the right was clearly established." <u>Lee</u>, <u>supra</u>, 284 F.3d at 1194 (quoting <u>Saucier</u>, <u>supra</u>). This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Id.</u>; <u>see also</u> <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1031-33 (11th Cir. 2001)(<i>en banc</i>). Following the Supreme Court's decision in <i>Pearson</i>, the courts are free to consider the elements in either sequence and to decide the case on the basis of either element that is not demonstrated. <u>See</u> <u>Pearson v. Callahan</u>, 129 S. Ct. at 818; <u>Youmans v. Gagnon</u>, 626 F.3d at 562-63.

Consequently, the <u>Saucier</u> test is no longer mandatory, but is to be used as a guideline when appropriate. <u>Id</u>.

<u>Discussion</u>

*A. Plaintiff's Claim*

### i. Complaint

In his complaint (DE#1), Hall alleges that beginning February 25, 2010 he faced imminent danger of serious physical injury at Dade Correctional Institution (Dade CI) when the sink in his cell lacked running water. As a result, he suffered from multiple illnesses, including plaque buildup, bad breath, bleeding gums, dehydration, and severe physical pain to his stomach and bladder. (<u>Id.</u>:4-5).

Hall filed an informal grievance on February 25, 2010, notifying the warden of the inoperable sink in his cell. (<u>Id.</u>:5). The following day, Hall's grievance was approved, and stated that a work order had been submitted to the plumber. (<u>Id.</u>). Thus, by February 26, 2010, Hall asserts, Marvez knew of Hall's malfunctioning sink. (<u>Id.</u>). Notwithstanding, Marvez deliberately and willfully failed to repair the sink, denying Hall access to running water, in violation of his Eighth and Fourteenth Amendment rights. (<u>Id.</u>:5-6).

### ii. Plaintiff's Motion for Summary Judgment

In his motion for summary judgment (DE#58), Hall asserts he states a sufficient claim of cruel and unusual punishment, deliberate indifference to his health and safety, in violation of

9

his Fourteenth Amendment right. (<u>Id.</u>:2). He further alleges he sustained sufficient physical injury and imminent danger of serious physical injury, which cannot be labeled as "de minimus." (<u>Id.</u>:2,24).

According to Hall, his verbal communications with Marvez on February 26, 2010 and again on March 4, 2010, regarding the lack of running water in his cell, was sufficient evidence that Marvez was on notice regarding the needed repairs.

Despite Marvez's statement that he never received a work order, Hall argues Marvez nonetheless knew of Hall's inoperable sink due to their verbal communications. (DE#59:2). Although Marvez explained he was directed not to take requests from inmates, but rather to instruct them to follow the proper procedures, Hall alleges Marvez failed to provide any proof in support of this assertion.

### iii. Plaintiff's Affidavit

In his affidavit, Hall states that on or about February 19, 2010, he was placed in Dade CI, H Dorm, Quad 2, Cell H2109. (DE#58:34). On February 25, 2010, the sink therein no longer supplied running water. (<u>Id.</u>). On that same date, he informed the warden, by way of an informal grievance, of the malfunctioning sink, which was approved the following day indicating a work order for the repair had been submitted. (<u>Id.</u>:34-35). Notwithstanding, Hall remained without running water from February 26, 2010 through March 25, 2010, causing him to suffer from severe physical pain as a result of thirst and dehydration. (<u>Id.</u>). Morever, due to the malfunctioning sink, Hall was unable to brush his teeth, which led to bleeding gums and plaque buildup. (<u>Id.</u>:36). He also suffered

from diarrhea, kidney and bladder issues, migraine headaches, lack of sleep, severe mental pain, nausea, dizziness, weakness and depression.(<u>Id.</u>).

Hall's affidavit further reveals that he sought medical assistance beginning on March 12, 2010, while still incarcerated at Dade CI through June 3, 2010, following a transfer to Lake Correctional Institution (Lake CI). (DE#58:37). His complaints consisted of dehydration, physical pain, bleeding gums, diarrhea and cramps, all of which were evaluated. (<u>Id.</u>).

Hall reiterates Marvez's knowledge of the malfunctioning sink in Hall's prison cell and his deliberate indifference thereto. (DE#58:40). According to Hall, when he verbally requested Marvez to fix the sink, Marvez responded he was aware of the needed repairs. (<u>Id.</u>:41). Notwithstanding, no such repairs were ever made. (<u>Id.</u>). Then, on May 4, 2010, when Hall asked Marvez again to fix the sink, Marvez responded he did not have the time to do so. (<u>Id.</u>).

On March 9, 2010, Hall alleges he witnessed two other inmates verbally inform Marvez that the toilet in their cell was not flushing properly, which Marvez immediately repaired. (DE#58:44).

On March 10, 2010, Hall wrote to Marta Villacorta, Regional Director of Institutions, informing her of the malfunctioning sink and Marvez's refusal to make the needed repairs. (DE#58:43). Shortly thereafter, Villacorta responded explaining that a determination regarding the functionality of his sink was made and a work order had been submitted. (<u>Id.</u>).

### iv. Gary Gaines Affidavit

On February 26, 2010, Gary Gaines claims to have witnessed Hall inform Marvez of the lack of running water from his sink, which Marvez acknowledged.(DE#58:48). Although Hall informed Marvez of the sink, when Gaines later visited Hall's cell the sink remained broken. (Id.).

### v. Plaintiff's Sick-Call Requests

On March 2, 2010, March 4, 2010 and March 11, 2010, Hall completed a sick-call requests, indicating he suffered from pain in his kidneys and difficulty with his bowels, along with bleeding in his gums and teeth, rash, lump and chest pain. (DE#58:54-56). His March 17, 2010, sick-call requested indicated he was severely losing weight, needed a diet pass, suffered from diarrhea, had a lump, continued to be dehydrated from not having water in his cell, and suffered from weakness and lightheadedness. (Id.:57). The last sick-call request indicated that Hall continued to suffer from severe physical pain in his teeth, mouth, gums and bleeding. (DE#58:58).

### vi. Defendant's Response to Interrogatories

Marvez's response to Hall's interrogatories (See DE#58:59-69), reveals in pertinent part, that a work order was never submitted to Marvez to repair Hall's sink in cell H2109 at Dade CI either on February 26, 2010 or anytime between February 23, 2010 up and until March 29, 2010. (DE#58:62,63). Similarly, during the time period of February 26, 2010 to March 25, 2010, he was not aware of any needed repairs in Cell H2109. (Id.:65).

### vii. Plaintiff's Deposition

In addition to the information provided by Hall, his deposition further revealed that while confined at Dade CI, he was in a regular dorm with accessibility to leave his cell during the day. (DE#59:34). At least twice a day, he went to the "chow hall," wherein access to water or a cup of juice was available. (Id.:38-39).

Moreover, from February 19 to about March 25, Hall had shower access. (DE#59:39). Although he was permitted to use a tooth brush therein, he refused to do so declaring that the water was contaminated. (Id.). No support for the aforementioned allegation was provided.

### x. Plaintiff's Supplemental Medical Records

In a supplemental filing wherein additional medical records, were provided, it is clear that Hall has a history of abdominal pain, diarrhea, chest pain, and back pain beginning from November 25, 2009 and continuing until well after he was transferred from Dade CI. (See DE#60).

While at Dade CI, Hall complained of dehydration on two occasions only, March 11, 2010 and March 23, 2010. (See DE#60). In addition to the aforementioned dates, Hall visited the health service offices several other times with complaints that included, but were not limited to weakness, chest tightness, cough, weight loss, chest pain, abdominal pain, with the main complaint being severe diarrhea. (Id.). Specifically, during his March 17, 2010 visit, Hall's provider indicated there were no signs of dehydration. (Id.). Important to note, during a March 25, 2010

13

visit, Hall indicated he drinks a lot of water. (Id.).

During his visits at Ockeechobee Correctional Institution (Okeechobee CI), Central Florida Reception Center and Lake Correctional Institution (CFRC), wherein he was no longer subjected to his broken sink located, the records reflect that from April 7, 2010 through July 2, 2010, Hall continued complaining of depression, diarrhea, back pain, and chest pain. (See DE#60). His mental evaluations indicated he showed signs of mild to moderate or emotional impairment, which was manageable on an outpatient basis. (Id.). On one occasion, April 29, 2010, Hall stated he was suicidal. (Id.).

*B. Defendant's Arguments*

In his Motion for Summary Judgment and Opposition to Hall's Motion for Summary Judgment (DE#67), Marvez argues that Hall's action is frivolous and barred by 28 U.S.C. ¶1915(e)(2)(B)(i), he failed to state a claim upon which relief can be granted, the claims are barred by the Prison Litigation Reform Act, no violation of Hall's constitutional rights occurred, and Marvez is entitled to qualified immunity. (DE#67:1-2). Moreover, Marvez argues injunctive relief is moot, as Hall is no longer housed in the cell of the alleged incident. (Id.:2).

<u>i. Defendant, Richard Marvez's affidavit</u>

Marvez admits he was employed by the Department of Corrections (DOC) as the Plumber during the time period of February 25, 2010 to March 26, 2010. (DE#67:3;DE#67,Ex.B). He has held his position since December 11, 2009. (DE#67,Ex.B). As the plumber his responsibilities include overseeing all plumbing maintenance and

repairs at Dade CI. (<u>Id.</u>). He is overseen by and reports to the Maintenance Superintendent. (<u>Id.</u>). According to DOC policy,[1] Marvez receives his daily work from the Superintendent in the form of work orders, a process laid out in the DOC Operating Procedure 604.102. (<u>Id.</u>). As such, he has been directed by his supervisors to instruct inmates to follow the proper procedure if they believe they have plumbing issues and not to take direction or requests directly from inmates. (<u>Id.</u>).

Marvez's affidavit further illustrates during February 25, 2010 through March 26, 2010, while working at Dade CI as the plumber, he never received a work order regarding any repairs to Cell 2109 in H Dormitory. (DE#67,Ex.B). Moreover, a review of the work order management system shows no work orders or DC2-210 forms were submitted regarding any requested repairs to Cell 2109 in H Dormitory. (<u>Id.</u>). As set forth in the DOC Operating Procedure 604.102, a DC2-210 form is filled out by the Correctional Officers assigned to a dormitory when repairs are requested to a cell or within a cell block. (<u>Id.</u>). Likewise, Marvez asserts that during the aforementioned time period, he neither had knowledge nor was he aware of any needed repairs to Cell 2109 in Dormitory H, including repairs to the sink to restore running water.

On April 1, 2010, when he was served with a Complaint alleging he intentionally failed to repair the sink at issue, he immediately investigated the problem. (DE#67,Ex.B). Upon doing so, he learned Cell 2109 in Dormitory H had running water. (<u>Id.</u>). Moreover, after reviewing Hall's picture, Marvez claims he does not know Hall and he does not recall Hall interacting with him at any time. (<u>Id.</u>). If, however, Hall had ever approached him regarding a repair to the sink in his cell, Marvez would have advised him to follow procedure

_____

[1](<u>See</u> DE#67,Ex.G – DOC Operating Procedure 604.102).

and advise the security staff in his dormitory. (<u>Id.</u>).

### ii. Moses M. McKoy's Affidavit

Moses M. McKoy's affidavit, Hall's cellmate during the alleged time frame in which the sink in his cell had no running water stated that from May 2009 until April 2010, he was located and housed at Dade CI in H Dormitory, Cell 2109, assigned to the lower bunk. (DE#67,Ex.C). According to McKoy, from February 18, 2010 to March 26, 2010, Hall was housed in H Dormitory, Cell 2109 with him. (<u>Id.</u>). During this time, there were no issues with the sink; in fact, the cell's sink had hot and cold running water. (<u>Id.</u>).

### iii. Lars Severson's Affidavit

Lars Severson, the Assistant Warden at Dade CI, states that on February 26, 2010, he responded to Hall's grievance stating a work order had been issued for the repair of a sink in Cell 2109, H Dormitory. (DE#67,Ex.D). Specifically, upon Severson's review of the grievance, by telephone he called the dormitory wing security office in H Dormitory, spoke to a correctional officer, requested to have the housing sergeant investigate the claim and submit a DC2-210 form for needed repairs as per DOC Operating Procedure 604.102. (<u>Id.</u>). Following approval of the grievance, a work order was submitted to fix the sink. (<u>Id.</u>). However, Severson did not follow up on if a work order was submitted at the time. (<u>Id.</u>). Only upon receiving an inquiry from the Office of the Attorney General in May regarding Hall's complaint, did Severson learn no work order had ever been submitted regarding the alleged needed repairs. (<u>Id.</u>).

iv. Wesley Putnel's Affidavit

From February 25, 2010 to March 26, 2010, Wesley Putnel was employed by the DOC at Dade CI as the Maintenance Superintendant, which responsibilities included managing the plumber and tasking him regarding all plumbing maintenance and repairs at Dade CI. (DE#67,Ex.F). Putnel is responsible for issuing work orders, which are created as required by and in compliance with DOC Operating Procedure 604.102, to the plumber. (Id.). He explains when a repair to a cell is requested, Correctional Officers assigned to the dormitory wing are required to complete a DC2-210 form. (Id.). The DC2-210 form is then submitted to the Chief of Security for review and approval. (Id.). If the requested repair is approved, the information from the approved DC2-210 is entered into a work order management system and a work order for a repair is generated. (Id.). The work order is then assigned to the proper maintenance staff member. (Id.).

After a review of the work order management system at Dade CI for all work orders from February 25, 2010 to March 26, 2010, no work orders regarding any repairs to Cell 2109 in H Dormitory existed. (Id.). Moreover, a review of the work order management system also shows no DC2-2109 forms were submitted regarding any requested repairs to Cell 2109 in H Dormitory from February 25, 2010 to March 26, 2010. (Id.). Likewise, during the time period in question, Putnel neither had any knowledge nor was he aware of any needed repairs thereto, including repairs to the sink to restore running water.

v. DOC Orientation Acknowledgment Form

Upon intake into DOC custody, Hall received and acknowledged,

evidenced by his signature, an orientation regarding DOC procedures and the Inmate Orientation Manual. (DE#67,Ex.H).

### vi. David Reddick, MD's Affidavit

Dr. David Reddick, Region IV Medical Director and a licensed medical doctor, states a review of medical records between February 25, 2010 and March 26, 2010 show that on numerous occasions when Hall complained of dehydration, the attending medical staff would note that he was "well hydrated," indicating there were no signs of dehydration, among other observations. (DE#67,Ex.I).[2] During a March 26, 2010 visit, the chronological Record of Health Care suggests Hall may have attempted to mislead the medical staff as the supposed stool sample given by him consisted of urine, tap water and some undigested material "from lunch tray," none of which are normally found in a stool sample. (Id.). Likewise, his medical records show Hall had numerous complaints of diarrhea long before the time period of February to March 2010, when he alleges he did not have running water in his sink cell. (Id.). Hall's diarrhea complaints continued well after the time period he alleges he did not have access to water in his sink. (Id.).

A review of Hall's dental records reflect there were no signs of damage relating to dehydration or lack of the ability to brush. (DE#67,Ex.I). Within the dental records, there was one visit during the time period when he alleges he was without water in his cell.(Id.). In reviewing dental records from 2009 onward, Hall often complained of sore gums, requesting treatment, however no

---

[2]During the March 11, 2010 sick call visit, Hall made a statement to medical staff that his nick name is "The Law Suit Man." (DE#67,Ex.I). He also stated that his legal case was strong against medical and security and he wanted all of his complaints well documented in order to have more ammunition and support towards his allegations. (Id.).

issues required treatment until June of 2010 when Hall had a problem with a wisdom tooth. (Id.).

Reddick's conclusions include that Hall's records does not reflect Hall suffered from dehydration at anytime, there is no medical evidence that Hall suffered from diarrhea during the aforementioned time period, and if Hall did suffer therefrom the diarrhea was, by his own admission, chronic and ongoing well before and after the time period alleged and not the result of dehydration. (Id.). Finally, a review of the medical records do not support Hall's claim he was denied water during the alleged time period of February 25, 2010 to March 26, 2010. (Id.).

### vii. Juan Mendez's Affidavit

In rebuttal to Hall's only witness as to the sink not having running water, Gary Gains, Marvez provides Juan Mendez's affidavit. (DE#67,Ex.K). Mendez, is the Classification Officer at Dade CI for Inmate Gary Gains. (Id.). Mendez indicates that from the time period of February 25, 2010 to March 26, 2010, Inmate Gains was assigned to Cell 1110, G Dormitory and worked as a houseman in G Dormitory. (Id.). Because Inmate Gains was housed and worked as a houseman in G Dormitory, he would not have access to a cell in H Dormitory, including Hall's cell, Cell 2109, H Dormitory. (Id.).

*C. Plaintiff Hall's Response to Defendant's Motion for Summary Judgment*

In his response, Hall submits an unsworn affidavit from inmate Eli Binder, DC#B04125, stating that from February 2010 until March 2010, Binder was a maintenance plumbing orderly at Dade CI for Marvez. (DE#70:1-3). Allegedly, Binder saw and witnessed other

19

inmates verbally state and request Marvez to repair their broken or malfunctioning sink, which Marvez in fact repaired upon verbal requests. (Id.). These statements by Binder, Hall suggests, disputes Marvez's evidence and creates a genuine issue of material fact. (Id.).

In his supplemental affidavit, Hall provides that Gaines was allowed to visit Hall in the H Dormitory. (DE#70:3,DE#71). On behalf of Gaines, Hall alleges officers in the H Dormitory never checked to see if other inmates from other dorms visited the H dorm, which explains Gaines's ability to access Hall's cell and witness the non-working sink. (Id.:3-4). Also in his supplemental affidavit, Hall alleges his cell mate McKoy did not like Hall and therefore made false statements in his affidavit. (DE#70:4). Again, Hall asserts that his supplemental affidavit creates a genuine issue of material fact.

*i. Analsyis*

a. 28 U.S.C. ¶1915(e)(2)(B)(i)

Prior to addressing Hall's claim on summary judgment grounds, Marvez argues that Hall's allegations are frivolous and fail to state a claim. (DE#67:9,11).

As amended, 28 U.S.C. §1915 reads in pertinent part as follows:

Sec. 1915 Proceedings in Forma Pauperis

\*   \*   \*

(e)(2) Notwithstanding any filing fee, or

any portion thereof, that may have been paid,
the court shall dismiss the case at any time
if the court determines that –

                    *    *    *

(B) the action or appeal –

                    *    *    *

(i)  is frivolous or malicious;

(ii) fails to state a claim on which
relief may be granted; or

(iii) seeks monetary relief from a
defendant who is immune from such
relief.

A complaint is "frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11 Cir.), <u>cert. denied</u>, 534 U.S. 1044 (2001). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," <u>id.</u>, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." <u>Denton v. Hernandez</u>, 504 U.S. 25, 31 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11 Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)"). In order to state a claim, a plaintiff must show that conduct under color of state law, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States. <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11 Cir. 1998).

<u>Pro se</u> complaints are held to "less stringent standards than

formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."' Estelle v. Gamble, 429 U.S. 97, 106 (1979) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11 Cir. 1997). The complaint may be dismissed if the plaintiff does not plead facts that do not state a claim to relief that is plausible on its face. See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)(retiring the oft-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim); Watts v. FIU, 495 F.3d 1289 (11 Cir. 2007).  While a complaint attacked for failure to state a claim upon which relief can be granted does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65.  The rules of pleading do "not require heightened fact pleading of specifics . . . ."  The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007)(quoting Twombly, 127 S.Ct. at 1964).

In this case, Hall alleges violations of his Eighth Amendment rights, therefore, his version of the facts are accepted, but even under Hall's version of the facts, his claim does not rise to the

level of an Eighth Amendment violation.

### b. Motion for Summary Judgment

The foregoing indicates Marvez never received a work order to repair the sink in Hall's cell, thus it cannot be said that Marvez acted deliberately indifferent as to Hall's needs. Moreover, the records provided in this proceeding clearly show that Hall's medical, dental and mental conditions were never ignored and he was provided with medical attention on many occasions, thus failing to satisfy that as a result of the condition he faced, the inability to have running water from his sink cell, he was inflicted with unnecessary pain or suffering. Moreover, its difficult for Hall to meet the objective element prong necessary to prevail on an Eighth Amendment claim, when he was not precluded from drinking water altogether.

Likewise, Hall fails to establish any causation as to his claim. First, he fails to demonstrate that Marvez in fact was in receipt of a work order directing him to work the allegedly malfunctioning sink in Hall's cell. Second, even assuming that Marvez was aware of the sink in Hall's cell needing repair, Hall nonetheless has failed to show that as a result thereof he suffered any injury, especially in light of his chronic medical history well before and after his claim was moot.

Indeed, the record reflects that Hall had constant access to water, either at the dining hall, showers, or while receiving medical attention. It is clear that the amount of water available and received by Hall was more than minimally adequate. That he would have preferred to have more water is insufficient to establish an Eighth Amendment violation. Hall never alleges he had

no drinking water available to him whatsoever. Similarly, aside from his vague assertions, he fails to make any showing that the shower water was undrinkable. In fact, he received adequate food and medical attention. If there was a lack of drinking water in his cell, this was *de minimus* in view of the other attention and privileges which Hall received while confined. If however, Hall was deprived of drinking water all together, or the deprivation was imposed as a punishment, the outcome may be different, but this is not the case at bar. Despite Hall's allegations in this petition, the record shows water and/or juice were available to him everyday while dining. Although Hall previously testified that sometimes he only dined twice a day, he acknowledged it was his choice to do so.

Hall also alleges that Marvez's denial and delay of fixing his malfunctioning sink caused numerous illnesses, including, but not limited to dehydration, severe diarrhea, gastroesophogeal reflux disease, chest pain, abdominal pain, bleeding gums, plaque build up, depression, constant severe and unnecessary pain. However, there is nothing in the record to support such an allegation. To the contrary, Marvez's actions did not cause Hall any injuries. Hall speculates, without providing any proof in support thereof, that he now suffers and/or was suffering throughout the relevant time period with the aforementioned conditions as result of lack of running water from his cell sink. However, he provides no objective proof in this regard.

Notwithstanding, Hall's allegations fail to demonstrate causation between Marvez's alleged deliberate indifference and Hall's purported injuries. The records show Hall was under constant medical care, treated, provided medication, testing, and health accommodations, none of which correlated to lack of water. Thus, it is also readily apparent that Hall has not demonstrated how any

action or failure to act by the Marvez injured him.

Based on the foregoing, Hall's allegations fail to demonstrate Marvez had subjective knowledge of a risk of serious harm, and that he disregarded that risk by conduct that is more than gross negligence. Further, Hall has not established that Marvez was deliberately indifferent to any repair needed to his sink, if there was such a repair necessary. Hall has not shown that Marvez knew of that the sink in Hall's cell was malfunctioning and then disregarded any serious harm to Hall or displayed conduct beyond gross negligence as a result of the denial of a request for an repair to his sink.

There is nothing of record to suggest that Marvez was put on notice of the existence of a serious risk of harm via specific facts by Hall, or otherwise, which did or should have placed him on notice that Hall's health was being placed at risk, and that his intervention to prevent further harm was required.

In sum, Hall has not established a condition that inflicted unnecessary pain or suffering (*i.e.*, objective component for Eighth Amendment violation) and there is no indication in the record that Marvez acted with deliberate indifference by not repairing the allegedly malfunctioning sink. (*i.e.*, subjective component for Eighth Amendment violation).

Even if Hall has alleged a violation of a clearly established right, which the undersigned does not find, Marvez is alternatively entitled to qualified immunity. A reasonable officer would not have clearly understood that the officer was violating the Eighth Amendment rights of a prisoner under the circumstances here. See Saucier, 533 U.S. at 205, 121 S.Ct. 2151.

25

To the extent Hall is suing Marvez in his official capacity, Hall's claims against Marvez is in legal effect a claim against the DCI. In order to prevail on any official capacity claim, the plaintiff must have demonstrated that there existed a policy or custom which was a moving force behind the deprivation that caused his injury. See Monell v. Dept. of Social Services, 436 U.S. 658 (1978); Gilmore v. City of Atlanta, 774 F.2d 1495, 1504 n.10 (11th Cir. 1986); Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986). In this case, the facts of record do not indicate that there was official policy on the part of the DCI to violate inmates' constitutional rights with regard to water access. Hall has not demonstrated there was existence of an unofficial policy, attributable to DCI, of deliberate indifference to the inmates' basic human need for water.

In the absence of genuine issues as to any material fact, Marvez is entitled to summary disposition of the complaint against him. See Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, supra. See also Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990); Coleman v. Smith, 828 F.2d 714 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987).

### c. Prison Litigation Reform Act

Marvez argues that under the separate provision of the PLRA, 42 U.S.C. §1997e(e), Hall is barred from recovering money damages, based on his contention that Hall has not made a requisite showing that he suffered a physical injury as a result of not consuming sufficient amounts of water due to a malfunctioning sink thereby causing him numerous injuries, which is a predicate established by the PLRA under §1997e(e) for recovery of certain forms of monetary relief.

As noted <u>supra</u>, Hall states he is seeking a monetary award of $2,000,000.00. Hall, however, is not entitled to damages because he has not made a showing that he suffered anything more than a *de minimis* injury, as a result of Marvez's alleged acts/omissions.

Even if Hall were to prove his numerous illnesses, including, but not limited to dehydration, severe diarrhea, gastroesophogeal reflux disease, chest pain, abdominal pain, bleeding gums, plaque build up, depression, constant severe and unnecessary pain were a direct result of lack of running water from his sink, he has not demonstrated that the illnesses was significant enough to satisfy the injury requirement of 42 U.S.C. §1997e(e).[3] Thus, Hall's allegation is insufficient to save his cruel and unusual punishment claim for compensatory or punitive damages. Here, Hall has come forward with no evidence to establish that illnesses were significant, nor that it was even as a result of an inoperable sink.

Moreover, regardless of whether Hall was, in fact, denied access to running water from his cell, he fails to present a genuine issue of material fact as to any serious or significant injury he suffered as a result of the alleged inoperable sink. Despite his allegations, he provides no medical evidence or allegations that he suffered any serious injury or is at risk of injury. Accordingly, Hall cannot demonstrate that he sustained a serious or significant mental or physical injury as a result of the alleged inoperable sink, and therefore, summary judgment is appropriate Marvez.

---

[3] It is noted that the plaintiff has not even shown that the purported injury was more than *de minimus*. <u>See</u> <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated in part and reinstated in pertinent part*, 216 F.3d 970, 972 (11th Cir. 2000)(*en banc*); <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007).

In conclusion, absent a showing that Marvez was subjectively conscious of specific facts from which inference could be drawn that a substantial risk of harm to Hall existed, and further that they did "draw inference," but failed to act to prevent that risk of harm, the plaintiff has not satisfied the requirement of showing deliberate indifferent on the defendants' part, which is required for the plaintiff to prevail on summary judgment.

### d. Claim for Injunctive Relief

Further, it appears that Hall seeks a court order enjoining the defendants from continuing their allegedly deliberate indifference to Hall's needs. However, since the filing of this complaint, the plaintiff has been transferred from Dade CI to his current place of incarceration, to CFRC. Therefore, plaintiff's claim for such injunctive relief against the defendant is moot. See Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007)(generally, transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief); Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986)(inmates release from prison mooted claim for declaratory and injunctive relief); Tucker v. Phyfer, 819 F.2d 1030, 1035 (11th Cir. 1987)(claim of prisoner seeking declaratory relief regarding conditions in which he was held as a juvenile became moot when he reached the age of majority); McKinnon v. Talladega County, 745 F.2d 1360, 1365 (11th Cir. 1984)(inmates transfer to a different jail moots claim for declaratory and injunctive relief); Dudley v. Stewart, 724 F.2d 1493, 1494 (11th Cir. 1984)(transfer from county jail to state prison mooted claims for injunctive and declaratory relief against county jailers); cf., Johnson v. Turpin, 2001 WL 520804 (11th Cir. 2001)(prisoner's claims for injunctive relief not moot because he was still within the state prison system); see also, Thompson v.

28

<u>Carter</u>, 284 F.3d 411 (2d Cir. 2002)(transfer to different facility mooted request for relief); <u>Oliver v. Scott</u>, 276 F.3d 736, 741 (5th Cir. 2002)(same); <u>Lamb v. Bumpus</u>, 52 Fed.Appx. 740, 741 (6th Cir. 2002)(transferred from county jail); <u>Crocker v. Durkin</u>, 53 Fed.Appx. 503 (10th Cir. 2002)(transfer to different federal penitentiary); <u>Mayfield v. Fleming</u>, 32 Fed.Appx. 116 (4th Cir. 2002).

<u>Conclusion</u>

It is therefore recommended that: (1) the Plaintiff's motion for summary judgment (DE#58) be denied; (2) the Defendant's motion for summary judgment (DE#67) be granted; (3) the plaintiff's request for injunctive relief be dismissed, as moot; (4) this case be closed; and 5) all pending motions, not otherwise ruled upon by separate order, be dismissed, as moot.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the Report.

SIGNED this 25th day of April, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Wendall Jermaine Hall, <u>Pro Se</u>
    DC# 379682
    Central Florida Reception Center
    7000 H.C. Kelley Road
    Orlando, FL 32831

    Kiernan P. Moylan, Esq.
    Attorney General Office
    Civil Litigation Division

110 SE 6th Street
10th Floor
Fort Lauderdale, FL 33301-5000